UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEQUIN DEANDRE ANDERSON,

               Petitioner,               Case Number 12-10456
                                                      Honorable Marianne O. Battani

v.

JEFFREY WOODS,

               Respondent.
_____/

**OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS, (2) DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND (3) DENYING PERMISSION TO PROCEED IN FORMA PAUPERIS ON APPEAL**

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Petitioner was convicted after a jury trial in the Wayne Circuit Court of voluntary manslaughter, MICH. COMP. LAWS § 750.321, and felonious assault. MICH. COMP. LAWS § 750.82. The court sentenced Petitioner as a fourth-time habitual offender to a term of 12½-to-25 years for the manslaughter conviction and a concurrent 1½-to-4 year term for the assault conviction. The petition will be denied because none of his claims have merit. The Court will also deny Petitioner a certificate of appealability and permission to proceed in forma pauperis on appeal.

I. Background

Petitioner was charged with second-degree murder and lesser offenses as a result of the stabbing death of Donny Barnett in the early morning hours of December 16, 2008.

The evidence presented at Petitioner's jury trial revealed that Petitioner and his

girlfriend, Anita Burton, were at their home on the night in question drinking and smoking marijuana with other individuals. At some point that night, Barnett arrived with his girlfriend, Danielle Hardesty, to join the party. Barnett had been married to Burton, but the two were divorced that October. Burton testified that Barnett was a violent person when he was intoxicated, and he had previously threatened her life. On the night of the incident, however, Barnett had permission to come over with Hardesty. When Barnett and Hardesty arrived at the house, the other adults present departed. Two of Burton's children, Shamicah and Michael, were also in the house.

The four remaining adults continued to drink and smoke marijuana. At some point, Petitioner got into an argument with Burton and shoved her. Barnett, who was much larger than Petitioner, rebuked Petitioner for striking a woman. Soon thereafter threatening words turned to blows, and Petitioner and Barnett engaged in a series of fist fights, separated by Burton and Hardesty's attempts to calm the men down and convince Barnett to leave the house. By all accounts, Barnett prevailed in the fights. Petitioner had been rendered briefly unconscious at one point and was otherwise battered by the much larger Barnett. At some point during the fighting, Barnett instructed Hardesty to go to his car and retrieve his gun. Hardesty, in fact left the house and returned, but she did not retrieve a gun.

After the last of several fist-fights, Burton and Hardesty finally had Barnett standing at the front door, ready to leave. By this point, Petitioner had black eyes and said he was spitting up blood. Petitioner went into the kitchen and retrieved a large butcher knife and told Barnett to leave. He stood some distance away from Barnett. Seeing the knife, Barnett essentially dared Petitioner to use it, saying "you ain't going to do nothing with it little bitch." Petitioner stood holding the knife for a period of about twenty seconds. He then sprinted

at Barnett and stabbed him once in the chest, penetrating Barnett's lung and heart. Barnett staggered out onto the porch. Hardesty helped him into their car. They drove about a block away where Hardesty stopped to call for help. An ambulance arrived and Barnett was taken to the hospital where he died of his wounds.

The jury acquitted Petitioner of second-degree murder, but found him guilty of manslaughter and felonious assault. Following his conviction and sentence, Petitioner filed an appeal of right in the Michigan Court of Appeals. His appointed appellate counsel filed a brief that raised three claims:

> I. Denial of motion for directed verdict constituted reversible error.
>
> II. Verdicts of guilty based upon insufficient evidence constituted a denial of due process.
>
> III. Sentences imposed violated constitutional guarantees against cruel and/or unusual punishment.

Petitioner filed a pro-per supplemental brief that raised the following claim:

> I. The Defendant was denied his state and federal constitutional rights to a fair and impartial trial when members of jury interacted or overheard conversation between the family members of the victim, and judge abused his discretion when reviewing the juror to determine if there was any misconduct.

The Michigan Court of Appeals affirmed Petitioner's conviction in an unpublished opinion. People v. Anderson, No. 292958, 2010 WL 4105623, at *3 (Mich. Ct. App. Oct. 19, 2010). Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court which raised the same claims as in the Michigan Court of Appeals. The Michigan Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed by the Court. People v. Anderson, 488 Mich. 1050 (2011) (table).

Petitioner then filed the present habeas petition, raising the three claims presented by his appellate counsel in the state courts during his direct appeal.

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." Id. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a

state-court decision must be consistent with the respect due state courts in our federal system." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" Renico v. Lett, 130 S. Ct. 1855, 1862 (2010)((quoting Lindh v. Murphy, 521 U.S. 320, 333, n. 7 (1997); Woodford v. Viscotti, 537 U.S. 19, 24 (2002)(per curiam)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 131 S. Ct. 770, 786 (2011)(citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. Id.

"[I]f this standard is difficult to meet, that is because it was meant to be." Harrington, 131 S. Ct. at 786. Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. Id. Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Id.

(citing Jackson v. Virginia, 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)). Thus, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." Woodford, 537 U.S. at 24. Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 131 S. Ct. at 786-87.

### III. Discussion

A. Directed Verdict

Petitioner first claims that the trial court erred when it denied his motion for a directed verdict as to the second-degree murder charge at the close of the prosecution's case. The claim is not cognizable in this action.

Petitioner is entitled to habeas relief only if he can establish that his conviction and incarceration violates clearly established federal law as articulated by the United States Supreme Court. The Supreme Court has long held that every criminal defendant has a right not to be convicted of a crime unless there exists evidence "sufficient to show beyond a reasonable doubt the existence of every fact necessary to constitute the crime charged." In re Winship, 397 U.S. 358, 363 (1970). But as several courts have recognized, "the Supreme Court has never held that the submission of a charge, upon which there is insufficient evidence, violates a defendant's constitutional rights where the defendant is acquitted of that charge." Thomas v. Bell, 2008 U.S. Dist. LEXIS 6209, 2008 WL 268892 at *5 (E.D. Mich., Jan. 29, 2008) (citations omitted); Olivo v. Lafler, 2007 U.S. Dist. LEXIS

44032, 2007 WL 1747154 at *3 (E.D. Mich., June 18, 2007) (recognizing that "a number of cases have held that the submission to a jury of a criminal charge constitutes harmless error where the habeas petitioner is acquitted of that charge") (citations omitted); Calderon-Hernandez v. Trombley, 2007 U.S. Dist. LEXIS 86972, 2007 WL 4181274 at *5 (E.D. Mich., Nov. 27, 2007) (same) (citations omitted). Because Petitioner was acquitted of second-degree murder, Petitioner cannot establish that the submission to the jury of the charge of second-degree murder violates clearly established law as articulated by the United States Supreme Court.

B. Sufficiency of the Evidence

Petitioner's next claims that insufficient evidence was presented at trial to sustain his conviction for involuntary manslaughter and that the prosecution failed to disprove self-defense. Respondent asserts that the the Michigan Court of Appeals reasonably rejected this claim during Petitioner's appeal of right.

Sufficient evidence supports a conviction if "after viewing the evidence in light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis added). In evaluating a sufficiency of the evidence claim, the court views both direct evidence and circumstantial evidence in the light most favorable to the prosecution, drawing all available inferences and resolving all issues of credibility in favor of the fact-finder's verdict. United States v. Rayborn, 495 F.3d 328, 337-38 (6th Cir. 2007). A federal habeas court may not overturn a state court decision which rejects a sufficiency of the evidence claim, simply because the federal court disagrees with the state court's

7

resolution of that claim. Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the Jackson standard. See Cavazos v. Smith, 132 S. Ct. 2, 4 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." Id. Indeed, for a federal habeas court reviewing a state court conviction, "the only question under Jackson is whether that finding was so insupportable as to fall below the threshold of bare rationality." Coleman v. Johnson, 132 S.Ct. 2060, 2065 (2012).

First, to the extent that Petitioner claims that the prosecutor did not submit sufficient evidence to show he did not act in self-defense, the claim is not cognizable. Under Michigan law, self-defense is an affirmative defense. See People v. Dupree, 486 Mich. 693, 704, 712 (2010). "An affirmative defense, like self-defense, 'admits the crime but seeks to excuse or justify its commission. It does not negate specific elements of the crime.'" People v. Reese, 491 Mich. 127, 155, n. 76 (2012)(quoting Dupree, 486 Mich. at 704, n. 11). Although under Michigan law the prosecutor is required to disprove a claim of self-defense, See People v. Watts, 61 Mich. App. 309, 311 (1975), "[p]roof of the nonexistence of all affirmative defenses has never been constitutionally required...." See Smith v. United States, 133 S. Ct. 714, 719 (2013)(quoting Patterson v. New York, 432 U.S. 197, 210 (1977)). The Supreme Court and the Court of Appeals for the Sixth Circuit have rejected the argument that the Constitution requires the prosecution to disprove self-defense beyond a reasonable doubt. See Gilmore v. Taylor, 508 U.S. 333, 359 (1993)(Blackmun, J., dissenting)("In those States in which self-defense is an affirmative defense to murder, the Constitution does not require that the prosecution disprove self-defense beyond a

reasonable doubt"); Martin v. Ohio, 480 U.S. 228, 233-36 (1987). Therefore, "the due process 'sufficient evidence' guarantee does not implicate affirmative defenses, because proof supportive of an affirmative defense cannot detract from proof beyond a reasonable doubt that the accused had committed the requisite elements of the crime." Caldwell v. Russell, 181 F. 3d 731, 740 (6th Cir. 1999). As such, Petitioner's claim that the prosecutor failed to disprove his affirmative defense is non-cognizable on habeas review.

With respect to the remainder of Petitioner's claim, under Michigan law, voluntary manslaughter is an intentional killing, but it applies only when the killing was "committed under the influence of passion or in heat of blood, produced by an adequate or reasonable provocation, and before a reasonable time has elapsed for the blood to cool and reason to resume its habitual control . . . ." People v. Mendoza, 468 Mich. 527, 535 (2003) (quoting Maher v. People, 10 Mich. 212, 219 (1862)). It is "the result of the temporary excitement, by which the control of reason was disturbed, rather than of any wickedness of heart or cruelty or recklessness of disposition." Id. (quoting Maher, 10 Mich. at 219).

Viewed most favorably to the prosecution, the evidence showed that Petitioner committed voluntary manslaughter and did not act in self-defense. All the witnesses present at Petitioner's house on the night of the incident testified to the series of fights between the victim and Petitioner. The witnesses all agreed that the victim was larger than Petitioner and prevailed in the fights. There was also testimony that at some point the victim asked Hardesty to retrieve a gun from his car. Despite all this, the final encounter between the two men allowed the jury to find that Petitioner committed voluntary manslaughter. He stood for a period of twenty-seconds holding the butcher knife, asking the victim to leave. And while the victim continued to taunt Petitioner, viewed most favorably to the prosecution, the

evidence showed that the victim was about to finally leave the house. Nevertheless, Petitioner charged him at a sprint and stabbed him in the heart and lung. A rational trier of fact could conclude beyond a reasonable doubt based on the evidence presented that Petitioner committed voluntary manslaughter. Certainly, the verdict did not fall "below the threshold of bare rationality." Coleman, 132 S.Ct. at 2065. Petitioner has therefore not demonstrated entitlement to habeas relief with respect to this claim.

C. Eighth Amendment

Petitioner asserts that, given the circumstances of the homicide, his sentence is disproportionate under the Eighth Amendment.

Petitioner essentially argues that even if the homicide did not meet the requirements of self-defense, the fact that he had been violently attacked in his home constituted a mitigating factor that entitled him to a more lenient sentence. The United States Constitution, however, does not require strict proportionality between a crime and its punishment. Harmelin v. Michigan, 501 U.S. 957, 965 (1991); United States v. Marks, 209 F.3d 577, 583 (6th Cir. 2000). "Consequently, only an extreme disparity between crime and sentence offends the Eighth Amendment." Marks, 209 F.3d at 583; see also Lockyer v. Andrade, 538 U.S. 63, 77 (2003) (gross disproportionality principle applies only in the extraordinary case); Ewing v. California, 538 U.S. 11, 36 (2003) (principle applies only in "'the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality'") (quoting Rummel v. Estelle, 445 U.S. 263, 285 (1980)). A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.'" Austin v. Jackson,

213 F.3d at 302 (quoting United States v. Organek, 65 F.3d 60, 62 (6th Cir. 1995)).

Petitioner's sentence falls within the maximum penalty under state law. The circumstances of his crime were taking into account by the fact that he was convicted of manslaughter and not murder. The fact remains that Petitioner, who was a habitual felony offender, stabbed a man to death. Petitioner's 12½-to-25 sentence therefore does not present the extraordinary case that runs afoul of the Eighth Amendment's ban of cruel and unusual punishment.

### IV. Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473 (2000). The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. The Court will also deny Petitioner permission to proceed on appeal in forma pauperis because any appeal of this decision would be frivolous.

### V. Conclusion

Accordingly, the Court **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus. The Court further **DENIES** a certificate of appealability and permission to proceed on appeal in forma pauperis.

**SO ORDERED.**

s/Marianne O. Battani
Honorable Marianne O. Battani
United States District Judge

Dated: May 21, 2013

CERTIFICATE OF SERVICE

I hereby certify that on the above date a copy of this Opinion and Order was served upon the Petitioner via ordinary U.S. Mail, and Counsel for the Respondent, electronically.

s/Bernadette M. Thebolt
Case Manager